UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LOWER MANHATTAN DIALYSIS CENTER, INC. | : | |
| L-M DIALYSIS CORPORATION, LANTZ-MATALON | : | |
| CHINATOWN ASSOCIATES, INC. and CHINATOWN | : | |
| DIALYSIS CENTER, L.L.C., | : | |
| | : | |
| Plaintiffs | : | **CIVIL ACTION NO.** 07 CV 6903 |
| | : | |
| -against- | : | |
| | : | |
| JOHN P. LANTZ, M.D. and MARIE LANTZ, | : | |
| | : | |
| Defendants | : | |
| | : | |
| | : | |

## NOTICE OF REMOVAL

Defendants, John P. Lantz, M.D., and Marie Lantz, hereby file this Notice of Removal of the above-described action to the United States District Court for the Southern District of New York from the Supreme Court of the State of New York, County of New York, where the action is now pending and state:

1.   This cause was commenced in the Supreme Court of the State of New York, County of New York, under Index No. 07-602547, and on July 27, 2007 a copy of the Plaintiffs' Summons and Verified Complaint was transmitted by facsimile transmission to Defendants' attorneys, and a copy of Plaintiffs' Verified Complaint setting forth the claim for relief upon which the action is based was first received by Defendants on July 27, 2007.

2.    The action is a civil action for an injunction against alleged interference in corporate actions and the United States District Court for the Southern District of New York has jurisdiction be reason of the diversity of citizenship of the parties.

3.    The matter in dispute exceeds $75,000, exclusive of interest and costs.

4.    At the time of the commencement of this action in state court, and since that time, the Plaintiffs, Lower Manhattan Dialysis Center, Inc., L-M Dialysis Corporation and Lantz-Matalon Chinatown Associates, Inc. were, and still are, corporations, incorporated and existing under and by virtue of the laws of the State of New York, having their principal place of business in New York.  At the time of the commencement of this action in state court, and since that time, the Plaintiff, Chinatown Dialysis Center, L.L.C., was, and still is, a limited liability company, organized and existing under and by virtue of the laws of the State of New York having its principal place of business in New York.  None of the Defendants is a citizen of the state in which the action was brought.

5.    A copy of all process, pleadings, and orders served upon Defendants is filed with this notice.

6.    Defendants will give written notice of the filing of this notice as required by 28 U.S.C. § 1446(d).

7.    A copy of this notice will be filed with the Clerk of the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendants request that this action proceed in this Court as an action properly removed to it.


DATED:  July 31, 2007


                                DEENER, STERN & HIRSCH, P.C.
                                2 University Plaza
                                Hackensack, NJ  07601
                                Tel:  201-343-8788
                                Fax:  201-343-4640
                                email: ashramenko@deenerlaw.com
                                Attorneys for Defendants, John
                                P. Lantz, M.D. and Marie Lantz

                                By:  _Andre Shramenko_
                                     Andre Shramenko
                                     Attorney Bar Code #AS1309

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------ x

LOWER MANHATTAN DIALYSIS CENTER, INC.,
L-M DIALYSIS CORPORATION, LANTZ-MATALON
CHINATOWN ASSOCIATES, INC. and CHINATOWN
DIALYSIS CENTER, L.L.C.,

                         Plaintiffs,

           - against -

JOHN P. LANTZ, M.D. and MARIE LANTZ,

                        Defendants.

------------------------------------------------------------ x

Index No. 07 - 602547
Date purchased: July 27, 2007

Plaintiffs designate New York
County as the place of trial

The basis of the venue is
Plaintiffs' places of business

**SUMMONS**

Plaintiffs reside at
323 E. 34th Street
New York, NY 10016

To the above named Defendants:

    *You are hereby summoned* to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve notice of appearance, on the Plaintiff's Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: July 27, 2007

                            OTTERBOURG, STEINDLER, HOUSTON
                               & ROSEN, P.C.

                            By: _____
                                Bernard Beitel
                                Of Counsel
                            Attorneys for Plaintiffs
                            Office and Post Office Address
                            230 Park Avenue
                            New York, New York 10169
                            (212) 661-9100

Defendants' Address:

John P. Lantz, M.D.
46 Country Club Road
Tenafly, NJ 07670

Marie Lantz
46 Country Club Road
Tenafly, NJ 07670

855515.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
LOWER MANHATTAN DIALYSIS CENTER, INC.
L-M DIALYSIS CORPORATION, LANTZ-MATALON
CHINATOWN ASSOCIATES, INC., and CHINATOWN
DIALYSIS CENTER, L.L.C.,

Plaintiffs,

07/ 60 2547

- against -

**VERIFIED COMPLAINT**

JOHN P. LANTZ, M.D. and MARIE LANTZ,

Defendants.
-----------------------------------------------------------------x

Plaintiffs LOWER MANHATTAN DIALYSIS CENTER, INC (*"LMDC"*), L-M

DIALYSIS CORPORATION (*"L-M"*), LANTZ-MATALON CHINATOWN

ASSOCIATES, INC. (*"LMCA"*) and CHINATOWN DIALYSIS CENTER, L.L.C.

(*"CDC"*), by their attorneys, Otterbourg, Steindler, Houston & Rosen, P.C. as and for

their complaint against each of the defendants JOHN P. LANTZ, M.D. (*"Lantz"*) and

MARIE LANTZ (*"Marie"*), allege as follows:

**ALLEGATIONS APPLICABLE TO EACH CAUSE OF ACTION**

**Introduction**

FIRST:   This is an action for declaratory relief to enforce a shareholders

consent and agreement authorizing the sale of a lease of premises rented by LMCA

(which LMCA, in turn, rents to CDC), the use of designated funds to relocate the

ongoing business operations of CDC, the payment of previously authorized and

contractually committed sums to a loyal employee and for injunctive relief to prevent

defendants from improperly interfering with Plaintiffs' ongoing business operations.

856016.1

SECOND:   This action has its genesis in a relationship that has spanned over a quarter of a century. Since 1971, Robert Matalon, M.D. (*"Matalon"*) and defendant Lantz, both physicians and board certified nephrologists, have either practiced medicine together, or been involved in the ownership and management of one or more out-patient chronic renal dialysis facilities, as well as the corporate and business entities that obtain the leases for such operating facilities. Each facility is subject to a variety of administrative rules and regulations promulgated by the New York Department of Health and other regulatory authorities.

THIRD:   Unfortunately, the relationship has been strained by the deterioration over a number of years in Lantz's health, and recent oppressive and unreasonable demands made on the Plaintiffs by Lantz's wife, Marie. Lantz appears to be suffering from an apparent neurological disorder that leaves him bedridden and incapable of engaging in the practice of medicine or rendering any services to the Plaintiffs' business operations.

FOURTH:   After first establishing a medical practice together in 1971, Matalon and Lantz recognized the increasing and sustained demand for out-patient chronic renal dialysis facilities. And so, in 1985, they, as sole and equal shareholders, organized LMDC. The express purpose of LMDC was to own and operate an independent free-standing dialysis center. LMDC operated and continues to operate in the vicinity of New York University Medical Center. LMDC's original site was on Third Avenue and 17th Street in Manhattan. Today, it is located on East 34th Street.

FIFTH:   In 1995, L-M was formed by Matalon and Lantz, also as sole and equal shareholders. Its express purpose was also to own and operate an

856016.1                                    - 2 -

independent free-standing dialysis center at 187 Third Avenue in Manhattan. L-M operates independently, although LMDC provides certain administrative services to L-M.

SIXTH: Thereafter, LMDC formed CDC. CDC's purpose was to own and operate an independent free-standing dialysis center at 9-11 Crosby Street/150 Lafayette Street in the Chinatown section of Manhattan. Ninety (90%) percent of the membership interests in CDC is owned by LMDC. The other 10% is owned by a physician and board certified nephrologist who is employed by, and is co-medical director of, CDC. LMCA, whose sole and equal shareholders are Lantz and Matalon, holds the lease for the 9-11 Crosby Street/150 Lafayette Street premises, and CDC is its sole subtenant. LMCA has no other business.

SEVENTH: The foregoing medical facilities have been properly operated, well maintained and are profitable. From inception, Matalon has been the President and Chief Executive Officer of each of LMDC, LM and CDC (collectively, the *"Operating Companies"*). Although both Matalon and Lantz were appointed as Medical Directors of each of the Operating Companies, Lantz, because of his deteriorating health, has not, for a number of years, provided any services to any of the Operating Companies. As a result of his illness, Lantz has not, for more than the past five years, attended any of the premises at which the businesses are conducted and he provides no services whatsoever to any of the Plaintiffs.

EIGHTH: Despite Lantz's illness and medical condition, and his inability to assist or even participate in the businesses, Matalon has persevered. He has managed and maintained the successful operation of each of the Plaintiffs' dialysis

856016.1                                    - 3 -

centers.  Because the businesses have been profitable, periodic distributions have been made to Lantz and Matalon, as shareholders of the Operating Companies.

NINTH:  About two years ago, Matalon was advised that the owner of the 9-11 Crosby Street/150 Lafayette Street premises desired to pay LMCA to cancel the lease for the premises, cancel the sublease to CDC and regain possession of the leased premises.

TENTH:  On May 20, 2007, after Matalon had negotiated terms he considered acceptable to LMCA, as tenant, and CDC, as sub-tenant, Matalon, by pre-arrangement, met with Marie in her capacity as attorney-in-fact for Lantz, in front of Lantz and their two adult children, Dr. Pericles Lantz (*"Pericles"*) and Athena Lantz Pantagis (*"Athena"*), to discuss these opportunities and developments and the estimated costs relating to the relocation of CDC.  After consulting with and obtaining the approval of Pericles and Athena, Marie executed the document annexed hereto as Exhibit "A" (the *"Shareholders Agreement"*).  Having obtained the consent of Marie in her capacity as agent and proxy for Lantz, as a shareholder of the referenced corporations, CDC and LMCA were empowered to enter into and consummate the lease sale agreement and proceed with the relocation of CDC.

ELEVENTH:  Under the terms of the sale of the lease, time was, and remains, of the essence.  In return for vacating the premises by no later than December 5, 2008, the landlord agreed to pay $15 million in installments.  By the same measure, in the event CDC and LMCA fail to timely vacate the leased premises they are subject to substantial and costly daily penalties.  As a result of this agreement, the clock has started to run.  A suitable substitute premises must be obtained by CDC, regulatory

856016.1

- 4 -

approval must be secured for the relocation of the facility, renovations must then be made in conformity with applicable requirements and CDC must prepare for the contractually mandated departure from 9-11 Crosby Street/150 Lafayette Street.

TWELFTH:  With the landlord having made its first scheduled payments of approximately $7 million, Marie's attorney issued an ultimatum to Matalon (Exhibit "B"). As is set forth in counsel for Plaintiffs' response (Exhibit "C"), Marie's demands were clearly and unequivocally unacceptable. Specifically, Marie unilaterally declared the Shareholders Agreement "rescinded in its entirety" and demanded half of the gross proceeds of the lease sale (to which she is not entitled either under the Shareholders Agreement or as a matter of law) which was obtained by implementing the Shareholders Agreement that she now wants to rescind. She also asserted that such payment be accompanied by the payment of 7 per cent interest. In other words, Marie wants to eliminate the use of any of the proceeds to relocate the business of CDC, and instead demands that the businesses forego the needed capital to complete the move and relocation from 9-11 Crosby Street/150 Lafayette Street.

THIRTEENTH:  Relocating a medical facility, such as that operated by CDC, is a time consuming process. In addition to finding suitable premises and negotiating and executing a lease for the new site, there is the need to obtain regulatory approval for the relocation of the dialysis center. Matalon has commenced the process of locating suitable space, and any delay in completing that process may subject LMCA to severe penalties and drastically interfere with the ability of CDC to continue its ongoing business operations.

FOURTEENTH:  The Shareholders Agreement allocated up to $4 million of the proceeds realized from the sale of the lease for the costs of removal and relocation of the business of CDC.  That consideration is appropriate for the cancellation of CDC's sublease for the 9-11 Crosby Street/150 Lafayette Street and is consistent with obligation to the members of CDC, including the 10% minority member.

FIFTEENTH:  Marie also demanded that she be granted a veto on all corporate expenditures with respect to relocation of CDC, the details of which she demanded be sent to her for prior review and authorization.  She also demanded immediate unlimited access to all corporate books and records; and that Plaintiffs treat any amounts used to pay for the costs of relocating CDC as a loan by Lantz rather than the normal use by a corporation of its funds for furtherance of normal business operations.  Marie also demanded that the Plaintiffs hire her as a co-administrator of Plaintiffs' operation, although she has no dialysis facility administration experience and never was an officer or employee of the Operating Companies; that Pericles be named as a co-director of all corporations "effective immediately"; and that Marie and Pericles, neither of whom are corporate employees, be granted absolute and sole approval power over all corporate expenditures, including legal fees.

SIXTEENTH:  The penalty for failing to comply with Marie's ultimatum was to be harsh and swift.  If Matalon and Plaintiffs fail to acquiesce in Marie's demands by 5:00 p.m., Friday, July 27, Marie will commence an action in Superior Court New Jersey.

856016.1                           - 6 -

SEVENTEENTH:  In addition to interrupting and jeopardizing Plaintiffs' business with groundless demands and threats of legal action, Marie and her son, Pericles, have appeared at Plaintiffs' business premises, and in the process causing consternation among Plaintiffs' respective employees.  Indeed, although not a director, officer or employee, Marie and Pericles felt compelled to come unannounced to an office party for a retiring employee, at which Pericles then proceeded to make an uninvited speech, notwithstanding his lack of any professional nexus to the employees.

EIGHTEENTH:  Under these circumstances, Plaintiffs have no alternative but to seek a declaratory judgment under CPLR 3001 reaffirming the validity and enforceability of the Shareholders Agreement and denying Marie's demands as baseless, and to request a permanent injunction barring Marie and other members of the Lantz family under her influence or control from directly or indirectly interfering in any manner with Plaintiffs' operations.

**The Parties and Pertinent Individuals**

NINETEENTH:  At all times hereafter mentioned, Plaintiff LMDC was, and still is, a corporation organized and existing under and pursuant to the laws of the State of New York.  LMDC has from inception maintained its place of business in the City, County and State of New York.  LMDC is engaged in the business of ownership, establishment, management and operation of chronic renal dialysis facilities.

TWENTIETH:  At all times hereafter mentioned, Plaintiff L-M was, and still is, a corporation organized and existing under and pursuant to the laws of the State of New York.  L-M has from inception maintained its place of business in the City,

County and State of New York. L-M is engaged in the business of ownership, establishment, management and operation of a chronic renal dialysis facility.

TWENTY-FIRST:  At all times hereinafter mentioned, Plaintiff LMCA was, and still is, a corporation organized and existing under and pursuant to the laws of the State of New York. LMCA has from inception maintained its place of business in the City, County and State of New York. LMCA is engaged in the business of ownership of a lease for premises located in the City, County and State of New York. These premises are sublet to Plaintiff CDC for use in the management and operation of a chronic renal dialysis facility.

TWENTY-SECOND:  At all times hereinafter mentioned, Plaintiff CDC was, and still is, a limited liability company organized and existing under and pursuant to the laws of the State of New York. CDC has from inception maintained its place of business in the City, County and State of New York. CDC is engaged in the business of ownership, establishment, management and operation of a chronic renal dialysis facility.

TWENTY-THIRD:  Upon information and belief, Defendant Lantz is a resident of the State of New Jersey, and a shareholder and officer in each of LMDC, L-M and LMCA.

TWENTY-FOURTH:  Upon information and belief, Defendant Marie is a resident of the State of New Jersey, and has represented herself to be the "attorney-in-fact" for Lantz.

856016.1                          - 8 -

TWENTY-FIFTH:   Matalon is a resident of the County of Kings, Borough of Brooklyn, and State of New York, a shareholder and officer in each of LMDC, L-M and LMCA, an officer in CDC and is actively involved in the operation and management of the Plaintiffs in the within action.

TWENTY-SIXTH:   MIRIAM SINITZKY (*"Sinitzky"*) administers Plaintiffs and is the chief operating officer of LMDC, L-M and CDC.

**Background**

TWENTY-SEVENTH:   Over the course of time, Plaintiffs conducted their respective and related businesses.  Among the various decisions reached by the Plaintiffs were, among other things:

(a)   In January 1991, appointing Matalon as Chief Administrative Officer and Chairman of the medical staff of LMDC;

(b)   In March 1994, appointing Matalon and Lantz as Medical Directors of LMDC;

(c)   In December 1995, acknowledging that Sinitzky was the Chief Operating Officer of LMDC;

(d)   In March 1998, acknowledging that Sinitzky was the Chief Operating Officer of L-M;

(e)   In December 2000, acknowledging that Sinitzky was the Chief Operating Officer of CDC;

(f)    In May 2001, authorizing Sinitzky to be given a 10% non-voting interest in LMDC and a one-time bonus to pay any tax liability arising from the granting of such interest; and

(g)    In November 2001, authorizing Sinitzky to be given a 10% non-voting interest in L-M and a one-time bonus to pay any tax liability arising from the granting of such interest.

TWENTY-EIGHTH:  Prior to entering into or concluding any agreement with the owner of the premises leased by LMCA, Matalon, as a shareholder of LMDC, L-M and LMCA, arranged to meet with Marie on May 20, 2007, at the Lantz home.  During that meeting, Matalon observed the bedridden Lantz and met with Marie in her capacity as Lantz's attorney-in-fact.  Also present were Defendants' two adult children, Pericles and Athena.

TWENTY-NINTH:  Matalon and Marie discussed matters relating to the businesses of LMDC, L-M, and LMCA, including the potential sale of the lease to premises located at 9-11 Crosby Street/150 Lafayette Street, the relocation of CDC, the costs of relocation and the corporate obligations to Sinitzky.

THIRTIETH:  At the meeting, Marie reiterated that she held Lantz's power of attorney and then executed the Shareholders Agreement, which among other things authorized the sale of the lease, the allocation of $4,000,000 to pay relocation costs for CDC and approved a payment of a promised bonus to Sinitzky.  Significantly, prior to executing the Shareholders Agreement, both Lantz children advised their

mother that they were in agreement with the terms set out in the document handwritten by Matalon.

THIRTY-FIRST:  The Shareholders Agreement specifically authorized LMCA to enter into an agreement pursuant to which LMCA would be bought out of its lease at 9-11 Crosby Street/150 Lafayette Street for the sum of $15,000,000, for the proceeds to be distributed in an exact and particular manner, with various tranches of funds being held to cover the cost for relocating to a new facility, with the balance, $11 million, being divided among Matalon and Lantz, less a portion of the $11 million designated for Sinitzky, in accordance with the terms of long standing corporate resolutions "in recognition of her role in the operation and expansion of LMDC and related entities."

THIRTY-SECOND:  At the time that the Shareholders Agreement was executed, Marie and her children were also made aware that the final agreements with regard to selling the lease would be signed shortly and that, thereafter, CDC would have no more than eighteen (18) months to move out.

THIRTY-THIRD:  In reliance upon the terms of the duly executed Shareholders Agreement, and in the absence of any effort or steps to thwart or hinder the execution of the sale of lease agreement, LMCA entered into the lease sale agreement in late June 2007.  Matalon, thereafter, advised Marie of its execution.

THIRTY-FOURTH:  Thereafter, by letter emailed and overnighted on July 23, 2007, counsel for Marie issued an ultimatum (Exhibit "B"), stating that the Shareholder's Agreement was rescinded, and threatening the commencement of a legal action in New Jersey if Marie's demands were not met by 5:00 p.m., Friday, July 27,

2007. Through her counsel Marie demanded, among other things, half the proceeds of the lease sale, leaving no reserve or funds to be used for the relocation efforts, which would be an improper and unjust violation of obligations due to CDC, as a subtenant and to the members of CDC, including a 10% minority member. She also asserted, without any factual or legal basis that such payment is to be accompanied by the payment of 7 per cent interest.

THIRTY-FIFTH:  In addition, Marie demanded, without any legal or factual basis that any of the sums used to pay the CDC relocation costs be treated as loans by Marie, that she be employed by the "corporation", an entity which is undefined, as its "Co-Administrator with a salary to be determined and with medical benefits for Marie and "her husband"; that her son Pericles "be named Co-Director of all corporations effective immediately"; and that "payment of all corporate expenditures, including legal fees, were to be approved only" by Marie or her son, despite the fact that neither Marie nor her son were or are directors, officers or employees of the Plaintiff corporations.  Marie also sought to block the payment to Sinitzky, and demanded unfettered access, as and when she demanded to review all corporate records reflecting receipts and disbursements.

THIRTY-SIXTH:  As is set forth in counsel for Plaintiffs' letter dated July 27, 2007 (Exhibit "C"), Marie's demands are without any factual and legal basis.

THIRTY-SEVENTH:  Consistent with Marie's campaign of ultimatum and intimidation, although neither an officer, director nor employee of any of the Plaintiffs, Marie with Pericles took it upon themselves to appear at Plaintiffs' business premises and interfered with an employees' celebration.

856016.1                                      - 12 -

## FIRST CAUSE OF ACTION

THIRTY-EIGHTH:   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "FIRST" through "THIRTY-SEVENTH" of the Complaint as if fully set forth hereat.

THIRTY-NINTH:   In the immediate future, Matalon will cause one or more of the Plaintiffs to expend millions of dollars to obtain new facilities for use by CDC in continuing its dialysis center.

FORTIETH:   Upon information and belief and based on the threats and demands made by Marie, any action taken to implement the expenditures envisioned by the Shareholders Agreement will subject Matalon and the Plaintiffs to claims by Defendants, all of which will be without factual or legal support, of misuse of corporate funds, breach of duty and other reckless and irresponsible charges.

FORTY-FIRST:   Plaintiffs want to proceed with their ongoing business activities without having to defend baseless claims asserted by defendants in the Superior Court, Bergen County, State of New Jersey, a jurisdiction where none of the Plaintiffs are located and where no corporate business has ever been or is being conducted.

FORTY-SECOND:   Given Marie's unconscionable, factually unsupportable, and legally baseless ultimatum, Plaintiffs seek a declaration from this Court that judgment be entered in this action declaring that:

(1) the Shareholders Agreement is valid, operative and enforceable;

856016.1                                           - 13 -

(2) Defendants may not hinder or interfere with Plaintiffs' respective business operations;

(3) Defendants may not hinder or interfere with Plaintiffs' efforts to comply with the terms of the sale of the lease; and

(4) the agreements set forth in the Shareholders Agreement are valid and in full effect, and that Plaintiffs owe no further obligations to Lantz except those that may already exist either in contract or in law.

FORTY-THIRD:   In light of the fact that the Shareholders Agreement were knowingly and voluntarily executed by Marie, Plaintiffs are entitled to said declaratory judgment.

## SECOND CAUSE OF ACTION

FORTY-FOURTH:   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "FIRST" through "FORTY-THIRD" of the Complaint as if fully set forth hereat.

FORTY-FIFTH:   Based upon Marie's egregious demands and conduct, Plaintiffs' face irreparable harm and damage, and have no adequate remedy at law. Accordingly, Plaintiffs are entitled to a judgment permanently enjoining Marie and other members of her family under her influence or control from interfering with Plaintiffs' normal-day-to-day operations, including appearing at Plaintiffs' respective premises and functions.

856016.1

WHEREFORE, Plaintiffs demand judgment against (a) Lantz and Marie on Plaintiffs' first cause of action for a declaratory judgment declaring and determining as follows:

      (1) that the Shareholders Agreement is valid, operative and enforceable;

      (2) that Defendants may not hinder or interfere with Plaintiffs' respective business operations;

      (3) that Defendants may not hinder or interfere with Plaintiffs' efforts to comply with the terms of the sale of the lease; and

      (4) that the agreements set forth in the Shareholders Agreement are valid and in full effect, and that Plaintiffs owe no further obligations to Lantz except those that may already exist either in contract or in law.

      (b) against Marie on Plaintiffs' Second Cause of Action for an injunction as to Marie and other members of her family under her influence or control, all together with the costs and disbursements of this action, and such other further or different relief as to the Court may seem just and proper.

Dated: New York, New York
       July 27, 2007

                           OTTERBOURG, STEINDLER,
                           HOUSTON & ROSEN, P.C.

                           By: _____
                                Bernard Beitel
                                Of Counsel
                         Attorneys for Plaintiffs
                         230 Park Avenue
                         New York, New York 10169
                         212-661-9100

856016.1

STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NEW YORK      )


Robert Matalon, M.D., being duly sworn, deposes and says:

I am the President and the Chief Executive Officer of LOWER MANHATTAN DIALYSIS CENTER, INC ("*LMDC*"), L-M DIALYSIS CORPORATION ("*L-M*") and LANTZ-MATALON CHINATOWN ASSOCIATES, INC. ("*LMCA*"), and a Medical Director, President and senior executive of CHINATOWN DIALYSIS CENTER, LLC ("*CDC*"), the Plaintiffs in the within action; I have read the foregoing Complaint and know the contents thereof and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

This verification is made by deponent because LMDC, L-M and LMCA are corporations, and deponent is an officer thereof, to wit, their President and the Chief Executive Officer, and CDC is a limited liability company, and deponent is an officer thereof, to wit, President and senior executive.


_____
ROBERT MATALON, M.D.


Sworn to before me this
__26__ day of July, 2007


_____
NOTARY PUBLIC

MYRNA O. DACILLO
Notary Public, State of New York
No. 31-5069445
855585.1 Qualified in New York County
Commission Expires 11/25/2010

Exhibit A

Meeting held on Sunday, May 20th, 2007
Present: Robert Matalon, John P. Lantz, Marie Lantz

Re: Subject matter relating to Cover Manhattan Dialysis Center (CMDC), LM Dialysis Corporation (L-M), and Lantz-Matalon Chinatown Associates.

The following were agreed and consented to:

① Lantz-Matalon Chinatown associates will be bought out of its lease at 150 Lafayette Street, NY, NY, currently the site of the Chinatown Dialysis center, for the sum of 15 million dollars. The proceeds will be disbursed as follows:

   a) 4 million dollars will be set aside in CMDC for the relocation, renovation and re-equiping of Chinatown Dialysis Center and related costs.

   b) The remaining 11 million dollars to will be divided equally between John P. Lantz and Robert Matalon, except that:

   c) up to 10% of the 11 million dollars, less expenses including professional fees and other related costs, to be paid to Miriam Sinitsky in recognition of her future role in the operation and expansion of CMDC and related entities.

② CMDC and L-M agree and consent that Robert Matalon will pursue negotiations with Bellevue Hospital and the Health and Hospital Corporation of NY (HHC), to personally proceed with providing dialysis services in Bellevue Hospital under his own entity.

Robert [signature]
Robert Matalon, shareholder, CMDC, L-M, Lantz-Matalon Chinatown Associates

Marie Lantz [signature]
Marie Lantz, as attorney-in-fact for John P. Lantz, shareholder, CMDC, L-M, Lantz-Matalon Chinatown associates

# DEENER, STERN & HIRSCH
A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW
TWO UNIVERSITY PLAZA
HACKENSACK, N.J. 07601

TELEPHONE (201) 343-8788
FAX (201) 343-4640

NEW YORK OFFICE:
821 Franklin Avenue
Suite 203
Garden City, NY 11530
(516) 739-6048

JEROME A. DEENER*
ROBERT A. STERN*
DEBRA T. HIRSCH*
ANDRE SHRAMENKO+

HENNA V. SHAH, Counsel**

ADAM M. GRENKER, Senior Associate***

*Member of NY & NJ Bar
**Member of NY, NJ, CA Bar
***Member of NY Bar Only

July 20, 2007

Privileged Settlement Communication

**VIA EMAIL akatz@oshr.com**
Arthur Katz, Esq.
Otterbourg, Steindler, Houston & Ros
230 Park Avenue, 29th Floor
New York New York 10169

Re: Lantz

Dear Mr. Katz:

As you know, Mr. Manfredonia and I represent Marie Lantz as Agent for her intermittently-ill husband, Dr. John Lantz, under a Durable Power of Attorney. Dr. Lantz is a 50% stockholder in the various entities owned by Dr. Lantz and Dr. Matalon. As a 50% stockholder in the various entities, our client has an equal interest in the equity of each entity and the voting interest of each entity. My client has no intention of waiving either Dr. Lantz' equity interest or his voting interest and, in fact, has authorized me to aggressively pursue both.

My client is extremely displeased by the manner in which she and her family have been treated. They were not notified of the $15,000,000 lease buyout until approximately two weeks prior to May 20. Obviously, substantial negotiations had ensued for a substantial period of time, all while my client, a 50% stockholder in all entities, was left totally uninformed. This can only lead to a very strong inference of bad faith, which will have an impact in a Court of Equity.

The so-called "Shareholder Resolution" which was thrust upon my client on May 20th at her home, without the benefit of legal counsel and while her husband was lying in bed on the same floor in a recuperative state, is of no effect. The Resolution is to be considered rescinded in its entirety.

LAW OFFICES
## DEENER, STERN & HIRSCH
A PROFESSIONAL CORPORATION

Arthur Katz, Esq.
Otterbourg, Steindler, Houston & Ros
July 20, 2007
Page 2

The following demands are made of your client:

1.   50% of the proceeds deposited by the corporation totaling $6,744,846 from the closing which took place on or about July 2, 2007, are to be turned over to my client no later than 5:00 PM on July 27, 2007, with interest at the rate of 7% per annum. The distribution was agreed to by Dr. Matalon and Dr. Pericles Lantz in their recent conversations.

2.   All corporate Profit and Loss and Balance Sheet documents requested in the letter of John Manfredonia on May 22, 2007 are to be turned over to my client by 5:00 PM on July 27, 2007.

3.   No payments are authorized from the lease buyout proceeds to be utilized for reinvestment, except under the following circumstances.

     a.   Each proposed expenditure is to be forwarded to my client for her prior review and authorization. If my client deems the expenditure to be reasonable, she will authorize payment. My client retains the right to veto any payment deemed to be unnecessary or unreasonable. This was agreed to by Dr. Matalon and Dr. Pericles Lantz in their recent discussions.

     b.   Any payments authorized by my client for reinvestment are to be considered as loans by my client to the corporation which bear interest at the rate of seven (7%) percent per annum. The loans are to be repaid on a date which is no later than thirty (30) days following the date of death of Dr. John Lantz, inclusive of interest. This concept was agreed to by Dr. Matalon and Dr. Pericles Lantz in their recent discussions.

     c.   No payments are authorized to be made to Miriam Sinitsky without prior authorization from my client. Ms. Sinitsky is not a stockholder in any corporation, and indeed cannot be a stockholder in a professional corporation. Any payments to Ms. Sinitsky utilizing any portion of the proceeds of the lease buyout must have the prior written authorization of my client. My client does not approve of Ms. Sinitsky's refusal to turn over requested corporate documents or to provide my client with other documentation requested or to unilaterally cause the termination of medical coverage for Dr. John Lantz.

4.   Since Ms. Sinitsky unilaterally caused the loss of corporate health care coverage for Dr. John Lantz, the corporation is to continue covering his health costs from its funds. The

LAW OFFICES
# DEENER, STERN & HIRSCH
A PROFESSIONAL CORPORATION

Arthur Katz, Esq.
Otterbourg, Steindler, Houston & Ros
July 20, 2007
Page 3

health costs incurred by the corporation are not to be considered advances or loans and shall not reduce my client's interest in the corporation.

5.    Marie Lantz is to be employed by the corporation in the capacity of Co-Administrator, with a salary to be determined, and with medical benefits covering herself and her husband.

6.    Dr. Pericles Lantz is to be named Co-Director of all corporations effective immediately.

7.    Payment of all corporate expenditures, including legal fees, are to be approved only by Marie Lantz or Dr. Pericles Lantz.

8.    All books and records showing receipts and disbursements for all corporations will be available to my client or her representatives at such times as necessary.

9.    Quarterly corporation statements for all entities shall be delivered to my client within 30 days following the end of each calendar quarter.

The family has authorized me to advise you and your client that unless the demands as indicated above are met by 5:00 PM on July 27, 2007, the appropriate legal action, including an Order to Show Cause with restraints, will be filed with the Superior Court, Bergen County, State of New Jersey.

My client trusts that this action will not be necessary and that you and your client will favorably respond to the demands made by the time indicated. All of the foregoing is without prejudice to my client's legal and equitable rights which may otherwise be available in law and in equity.

Very truly yours,

DEENER, STERN & HIRSCH, P.C.

Jerome A. Deener

Jerome A. Deener

JAD:cp
cc:    Mrs. Marie Lantz
       John Manfredonia, Esq. via email manfredonia@verizon.net

Exhibit C

# OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

### 230 PARK AVENUE
### NEW YORK, NY 10169-0075

ARTHUR A. KATZ
MEMBER OF THE FIRM
akatz@oshr.com

TELEPHONE: (212) 661-9100
TELECOPIER: (212) 682-6104

July 27, 2007

<u>VIA E-MAIL</u>

Jerome A. Deener, Esq.
Deener, Stern & Hirsch
Two University Plaza
Hackensack, New Jersey 07601

Re:   Lower Manhattan Dialysis Center, Inc., L-M Dialysis Corporation,
Lantz-Matalon Chinatown Associates, Inc., and Chinatown Dialysis
Center, L.L.C., v. John P. Lantz, M.D., and Marie Lantz

Dear Mr. Deener:

    We are in receipt of your letter dated July 20, 2007.  The head of the letter contains a caption stating that it is a "Privileged Settlement Communication."  However, the contents of your letter belie that description.  Rather, your communication is a belligerent and unreasonable demand for concessions to your clients that are without merit or justification.

    In his capacity as the president of the entities in which Robert Matalon, M.D., and John P. Lantz, M.D., are investors, Dr. Matalon has conducted himself and the business of each of the involved entities in a manner that is fully compliant with the business and ethical standards mandated by law.  Moreover, Dr. Matalon's conduct in dealing with the unfortunate illness of his long-time business colleague and his generosity to Dr. Lantz and to his wife, Marie Lantz, deserves praise -- not unwarranted and irresponsible demands, and not threats of a lawsuit in the State of New Jersey in connection with businesses which always have operated solely in the City, County and State of New York.

    In order for the dialysis businesses and related leasing activities being conducted by Lower Manhattan Dialysis Center, Inc. ("*LMDC*"), L-M Dialysis Corporation ("*L-M*"), Lantz-Matalon Chinatown Associates, Inc. ("*LMCA*"), and Chinatown Dialysis Center, L.L.C. ("*CDC*", and collectively the "*Ventures*") to continue without unreasonable interference from the Lantz family and their lawyers, an action was filed today in the Supreme Court of the State of New York, County of New York for injunctive and declaratory relief.  A copy of the Summons

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

Jerome A. Deener, Esq.
July 27, 2007
Page 3

your allusion to the contrary) to an enforceable claim by Ms. Sinitzky. Accordingly, all of these demands are rejected.

    4.    The accusation that Ms. Sinitzky "unilaterally caused the loss of corporate health care coverage for Dr. John Lantz" is a patently false accusation. An apology should be sent to Ms. Sinitzky, a loyal and scrupulously honest executive of the various Ventures. We are not aware of any obligation of any of the Ventures to make gratuitous payments of health care costs for Dr. Lantz. Please provide us with any agreement or statutory authority that supports your demand to pay for the continued health care costs for Dr. Lantz. In the interim, and to the extent that health care costs are being voluntarily paid by LMDC, whether in the form of distributions to Dr. Lantz or direct payment to his health care providers, such has been and, to the extent continued, will be treated as on-account distributions to Dr. Lantz.

    5.    The demand to engage Marie Lantz as a paid employee of "the corporation in the capacity of Co-Administrator" is rejected. Without commenting on the experience or lack thereof by Mrs Lantz to be a qualified administrator, the Ventures operate in an environment regulated by the Department of Health, already are managed by a qualified administrator and additional assistance is not needed and may entail 'corporate waste'.

    6.    The demand to name Dr. Pericles Lantz as a "Co-Director of all corporations effective immediately" is rejected. There is a procedure for directors to be elected, and if Dr. Pericles Lantz wants to obtain such a position in the various corporations, then he should follow the appropriate procedure mandated by the respective corporation's by-laws and the New York Business Corporation Law and seek to be elected by the holders of a majority of the outstanding shares of voting capital stock of each of the respective corporations.

    7.    Marie Lantz and Dr. Pericles Lantz are neither directors, officers nor employees of any of the Ventures. Accordingly, they have no basis to demand their pre-approval for any corporate expenditure and such demand is rejected.

    8.    With respect to the demand for access to all books and records showing receipts and disbursements, your clients should first show a valid purpose for their request and access, if appropriate, will be granted at an appropriate time which is not then disruptive of the ongoing business of the Ventures. The blanket request for access "at such times as necessary" as determined in their sole opinion is rejected.

    9.    I do not believe that any of the Ventures issue "quarterly corporation statements". Thus, this demand is similarly rejected.

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

Jerome A. Deener, Esq.
July 27, 2007
Page 4


Lastly, since neither Dr. Pericles Lantz nor Marie Lantz is an employee, manager or patient of any of the Ventures, their uninvited appearance on the business premises or at a private function sponsored by one or more of the Ventures is inappropriate and disruptive and will not be tolerated. Therefore, please advise your clients accordingly. In the event that there is a proper reason for either of your clients to be invited on to the premises or to a private off-premises gathering, an invitation will be granted upon request.

This letter is without prejudice to our clients' rights, all of which are expressly reserved.

Very truly yours,

Arthur A. Katz

Enclosure


cc:    John M. Manfredonia, Esq.